**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ANNE O'BRIEN, individually and on behalf of all others similarly situated,<br>220 S. Exeter Street<br>Baltimore, MD 21202<br><br>Plaintiff,<br><br>v.<br><br>KELLY & ASSOCIATES INSURANCE GROUP, INC.,<br>1 Kelly Way, Suite 100<br>Sparks, MD 21152<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anne O'Brien ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant KELLY & ASSOCIATES INSURANCE GROUP, INC. d/b/a KELLY BENEFITS ("Defendant" or "KELLY BENEFITS"), for its failure to properly secure and safeguard highly valuable, protected, personally identifiable information including, *inter alia*, names, social security numbers, tax ID numbers, dates of birth, financial account information (collectively, "PII") and, medical information and health insurance information (collectively, "PHI", and together with PII, "Private Information");[1] and for its failure to comply with industry standards to protect information systems that contain Private Information, and alleges as follows:

[1] *Notice of Data Security Event*, Kelly Benefits, https://kellybenefits.com/data-event/ (last visited May 1, 2025).

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

2. This Court has general personal jurisdiction over Defendant because Defendant is a resident and citizen of this district, Defendant conducts substantial business in this district, and the events giving rise to Plaintiff's claims arise out of Defendant's contacts with this district.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant is a resident and citizen of this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4. Plaintiff Anne O'Brien is a resident and citizen of Baltimore, Maryland.

5. Defendant Kelly & Associates Insurance Group, Inc. is a Maryland corporation with a principal place of business located at 11740 1 Kelly Way, Suite 100, Sparks, Maryland 21152.

## FACTUAL ALLEGATIONS

**Kelly Benefits**

6. Defendant KELLY BENEFITS "is one of the nation's largest and fastest-growing providers of benefits administration and technology, broker and consulting services, payroll solutions and other comprehensive tools and strategies to serve businesses of all sizes."[2]

7. In furtherance of its benefit enrollment services, KELLY BENEFITS gathers and stores Private Information of its customers' former, current, or prospective employees. Potential Class Members' Private Information is collected during that individual's employee screening that they undertake with their former, current, or prospective employer.

8. KELLY BENEFITS therefore knowingly collects and stores sensitive Private Information of its customers' former, current, or prospective employees, and has a resulting duty to secure such information from unauthorized access and exfiltration.

9. KELLY BENEFITS expressly recognizes these duties, representing that "we are committed to providing you with the best possible online experience using our products and services while maintaining your privacy."[3] Further, KELLY BENEFITS states, "[t]he personal identifiable information that you provide to us via the Site will not be shared or transferred to unrelated third parties without your prior consent, unless it is required by law or judicial order, or directly related to the services requested."[4]

10. Despite its duties to safeguard individuals' Private Information, KELLY BENEFITS discovered that it was the victim of a cyber incident where an unauthorized third party

---

[2] Kelly Benefits, https://kellybenefits.com/ (last visited May 1, 2025).
[3] *Privacy Policy*, Kelly Benefits, https://kellybenefits.com/privacy-policy/ (last visited May 1, 2025).
[4] *Id*.

accessed a portion of its network between December 12, 2024 and December 17, 2024 and procured certain Private Information (the “Data Breach” or “Breach”).[5]

11. As a direct and proximate result of KELLY BENEFITS’s negligent failure to implement and follow basic security procedures, Plaintiff’s and Class Members’ Private Information —names, social security numbers, tax ID numbers, dates of birth, medical information, health insurance information, and financial account information —is now in the hands of cybercriminals.

12. Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, and other harms caused by the unauthorized disclosure of their Private Information —risks which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

13. As a sophisticated company with an acute interest in maintaining the confidentiality of the Private Information entrusted to it, Defendant is well-aware of the numerous data breaches that have occurred throughout the United States and its responsibility for safeguarding Private Information in its possession.

**The Data Breach**

14. According to Defendant, it “learned of suspicious activity within our environment and immediately launched an investigation, with the assistance of third-party forensic specialists, to determine the nature and scope of the activity.”[6]

15. Defendant claims that “the investigation determined Kelly Benefits’ environment was subject to unauthorized access between December 12, 2024 and December 17, 2024 and

[5] *Notice of Data Security Event, supra* n. 1.
[6] *Id.*

certain files were copied and taken. Kelly Benefits then began a time-intensive and detailed review of all files affected by this event to determine what information was present in the impacted files and to whom it related. Once this review was complete, Kelly Benefits reviewed its internal records to match the individual to the appropriate client or carrier. This analysis was completed on March 3, 2025."[7]

16. The compromised data includes affected persons' "name and one or more of Social Security number, tax ID number, date of birth, medical information, health insurance information, and financial account information." [8]

17. According to a notice of data breach filed with the Attorney General of Maine, the Data Breach has affected 263,893 individuals ("Data Breach").[9]

18. Defendant began notifying affected persons on April 21, 2025.[10]

19. Defendant's letter also offered free credit monitoring services to those potentially impacted by the breach.

20. Defendant did not state why it was unable to prevent the Data Breach or which security feature failed.

21. Defendant did not state why it did not contact affected persons about the breach until about four months after discovering the breach.

22. Defendant failed to prevent the data breach because it did not adhere to commonly accepted security standards and failed to detect that its databases were subject to a security breach.

---

[7] *Id.*
[8] *Id.*
[9] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/31cc467f-60ce-43da-985b-1157966dc553.html (last visited May 1, 2025).
[10] *See* Notice of Security Incident Letter addressed to plaintiff, attached hereto as Exhibit 1.

**Injuries to Plaintiff and the Class**

23. Shortly after April 21, 2025, Plaintiff received a breach notification from Defendant indicating that her Private Information had been compromised during the Data Breach.[11] According to the notification letter, the Data Breach exposed Plaintiff's name and Social Security number, date of birth, health or other insurance group ID number, health or other insurance member ID number.[12]

24. After the Data Breach, Plaintiff has received a significant increase in phishing emails and/or spam calls daily.

25. In response to the Data Breach, Plaintiff has spent significantly more time checking her bank and credit card statements than she did prior to the Data Breach.

26. Plaintiff is very concerned about the theft of her Private Information and has and will continue to spend substantial amounts of time and energy monitoring her credit status.

27. As a direct and proximate result of Defendant's actions and omissions in failing to protect Plaintiff's Private Information, Plaintiff and the Class have been damaged.

28. Plaintiff and the Class have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages, including spending substantial amounts of time monitoring accounts and records, in order to prevent and mitigate credit fraud, identity theft, and financial fraud.

29. In addition to the irreparable damage that may result from the theft of Private Information, identity theft victims must spend numerous hours and their own money repairing the impacts caused by this breach. After conducting a study, the Department of Justice's Bureau of

[11] *Id.*
[12] *Id.*

Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[13]

30. In addition to fraudulent charges and damage to their credit, Plaintiff and the Class will spend substantial time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions and changing passwords; (h) freezing and unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

31. Additionally, Plaintiff and the Class have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their PII is used, the diminution in the value and/or use of their PII entrusted to Defendant, and loss of privacy.

**Defendant Has a Duty to Protect Private Information**

32. As a benefits administrator, Defendant knew or should have known that protecting its PII/PHI was of the utmost importance.

33. Defendant could have prevented this Data Breach by properly securing and encrypting the Private Information of Plaintiff and Class members. Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

---

[13] U.S. Dep't of Justice, *Victims of Identity Theft, 2014* (Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

34. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

35. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from being compromised.

36. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[14] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[15]

37. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class members are long lasting and severe. Once Private Information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

**The Value of Private Information**

38. It is well known that Private Information is an invaluable commodity and a frequent target of hackers.

[14] 17 C.F.R. § 248.201 (2013).
[15] *Id*.

39. People place a high value not only on their Private Information, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[16]

40. People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[17] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all problems . . . and won't guarantee . . . a fresh start."[18]

41. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Experian reports

---

[16] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.
[17] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.
[18] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.
[19] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[20] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[21]

42. Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[22]

43. What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse.[23] In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

---

[20] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[21] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

[22] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf.

[23] AARP, *Is it possible to get a new Social Security number?,* https://www.aarp.org/retirement/social-security/questions-answers/new-number.html

44. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[24]

45. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

46. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[25]

47. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

48. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on

---

[24] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

[25] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

> the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

49. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class members, including Social Security numbers, and of the foreseeable consequences that would occur if their data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach.

50. Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.[27] Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

51. Defendant knew of the unique type and the significant volume of data contained in the Private Information that Defendant stored on their networks, and, thus, the significant number of individuals who would be harmed by the exposure of the data.

52. The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members

**Industry Standards for Data Security**

53. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[28]

---

[26] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.
[27] *Id.*
[28] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

54. In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, Deloitte, Equifax, and Capital One, Defendant is, or reasonably should have been, aware of the importance of safeguarding PII, as well as of the foreseeable consequences of its systems being breached.

55. Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a. Maintaining a secure firewall configuration;

b. Monitoring for suspicious or irregular traffic to servers;

c. Monitoring for suspicious credentials used to access servers;

d. Monitoring for suspicious or irregular activity by known users;

e. Monitoring for suspicious or unknown users;

f. Monitoring for suspicious or irregular server requests;

g. Monitoring for server requests for PII;

h. Monitoring for server requests from VPNs; and

i. Monitoring for server requests from Tor exit nodes.

56. The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[29] and protection of PII[30] which includes basic security standards applicable to all types of businesses.

57. The FTC recommends that businesses:

a. Identify all connections to the computers where you store sensitive information.

---

[29] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[30] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

b. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

58. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C.

§ 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[31]

59. Because Defendant was entrusted with consumers' PII, it had, and has, a duty to consumers to keep their PII secure.

60. Consumers, such as Plaintiff and the Class, reasonably expect that when they provide PII to companies or when those companies forward their PII to companies such as Defendant, that their PII will be safeguarded.

61. Nonetheless, Defendant failed to prevent the Data Breach. Had Defendant properly maintained and adequately protected its systems, it could have prevented the Data Breach.

**HIPAA Standards and Violations**

62. In addition to failing to follow universal data security practices, Defendant failed to follow healthcare industry standard security practices, including:

a. Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. 164.306(a)(2);

b. Failing to ensure compliance with HIPAA security standards by their workforce or agents in violation of 45 C.F.R 164.306(a)(94);

c. Failing to effectively train all members of its workforce and its agents on the policies and procedures with respect to PHI as necessary to maintain the security of PHI in violation of C.F.R. 164.530(b) and 45 C.F.R. 164.308(a)(5); and

d. Failing to design and implement and enforce policies and procedures to establish administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. 164.530(c).

[31] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

63. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[32] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

64. HIPAA's Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

65. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[33]

**CLASS ACTION ALLEGATIONS**

66. Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

67. The proposed Class is defined as follows:

> All persons whose Private Information was maintained on Defendant's servers and was compromised in the Data Breach.

68. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Class based upon discovery and further investigation.

---

[32] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.
[33] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

69. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Although the precise number is not yet known to Plaintiff, Defendant has reported that the number of persons affected by the Data Breach is 263,893.[34] The Class members can be readily identified through Defendant's records.

70. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether Defendant owed a duty or duties to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and obtaining their PII;

b. Whether Defendant breached that duty or those duties;

c. Whether Defendant failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

d. Whether the security provided by Defendant was satisfactory to protect customer information as compared to industry standards;

e. Whether Defendant misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

f. Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and the Class's PII secure and prevent loss or misuse of that PII;

g. Whether Defendant acted negligently in connection with the monitoring and protecting of Plaintiff's and Class's PII;

h. Whether Defendant's conduct was intentional, willful, or negligent;

i. Whether Defendant violated any and all statutes and/or common law listed herein;

j. Whether the Class suffered damages as a result of Defendant's conduct, omissions, or misrepresentations; and

k. Whether the Class is entitled to injunctive, declarative, and monetary relief as a result of Defendant's conduct.

[34] *See supra* n. 9.

71. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

72. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, data breaches.

73. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

74. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

75. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

76. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

77. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

78. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

79. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

80. Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its services, which solicitations and services affect commerce.

81. Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

82. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

83. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their servers—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

84. Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

85. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

86. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure

that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

87. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of being patients of Defendant.

88. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

89. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

90. Defendant also had a duty to exercise appropriate practices to remove former patients' Private Information once it was no longer required to retain pursuant to regulations.

91. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

92. Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Failing to periodically ensure that its email system had reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to detect in a timely manner that Class Members' Private Information had been compromised;

f. Failing to remove former patients' and employees' Private Information it was no longer required to retain pursuant to regulations,

g. Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

h. Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

93. Defendant violated Section 5 of the FTC Act and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

94. Plaintiff and the Class are within the class of persons that the FTC Act and HIPAA were intended to protect.

95. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

96. Defendant's violation of Section 5 of the FTC Act and HIPAA constitutes negligence.

97. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

98. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

99. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

100. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

101. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

102. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

103. Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

104. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

105. Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

106. Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

107. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

108. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

109. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

110. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

111. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

112. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

113. Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and insecure manner.

114. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**NEGLIGENCE PER SE**

115. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

116. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

117. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

118. For instance, HIPAA required Defendant to notify victims of the Breach within 60 days of the discovery of the Data Breach. However, despite the breach occurring in December 2024, Defendant did not notice affected victims until April 2025 – a delay of well over 60 days.

119. Defendant violated Section 5 of the FTC Act, HIPAA, and similar state statutes by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

120. Defendant's violation of Section 5 of the FTC Act, HIPAA, and similar state statutes constitutes negligence *per se*.

121. Class Members are consumers within the class of persons Section 5 of the FTC Act, HIPAA, and similar state statutes were intended to protect.

122. Moreover, the harm that has occurred is the type of harm the FTC Act, HIPAA, and similar state statutes were intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

123. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized

disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

124. Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**

125. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

126. Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

127. In its Notice of Privacy Practices, Defendant represented the limited circumstances for which it may disclose Plaintiff's and Class Members' Private Information to authorized third parties, wholly implying unauthorized third parties would not be privy to this Private Information and that Defendant would take necessary measures to protect against such unauthorized access.

128. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

129. When Plaintiff and Class Members provided their Private Information to Defendant in exchange for Defendant's services, they entered an agreement to protect such information and to destroy any Private Information that it was no longer required to maintain.

130. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant on the other, is demonstrated by their conduct and course of dealing.

131. Defendant solicited, offered, and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices.

132. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

133. In accepting the Private Information of Plaintiff and Class Members, Defendant understood and agreed that they were required to reasonably safeguard the Private Information from unauthorized access or disclosure.

134. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, including HIPAA, the FTC Act, and were consistent with industry standards.

135. As a result of services contracted by Plaintiff and Class Members, Defendant earned money with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

136. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

137. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

138. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

139. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their Private Information or to destroy it once it was no longer necessary to retain the Private Information.

140. As a direct and proximate result of Defendant's breach of the implied promises, Plaintiff and Class Members are at a current and ongoing risk of identity theft, and Plaintiff and Class Members sustained incidental and consequential damages including: (a) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) financial "out of pocket" costs incurred due to actual identity theft; (d) spam and targeted marketing emails; (f) diminution of value of their Private Information; (g) future costs of identity theft monitoring; (h) and the continued risk to their Private Information, which remains in Defendant's possession, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

141. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach to be determined at trial.

142. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(In the Alternative)**

143. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

144. Plaintiff brings this claim in the alternative to his breach of implied contract claim.

145. Plaintiff and Class Members conferred a benefit on Defendant. Specifically, they provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security.

146. Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form of their Private Information. Defendant appreciated and accepted that benefit. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

147. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiff and some Class Members.

148. As such, a portion of the payments made for the benefit of or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

149. Defendant, however, failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiff and Class Members provided.

150. Defendant would not be able to carry out an essential function of its regular business without the Private Information of Plaintiff and Class Members and derived revenue by

using it for business purposes. Plaintiff and Class Members expected that Defendant or anyone in Defendant's position would use a portion of that revenue to fund adequate data security practices.

151. Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

152. If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed their Private Information to be provided to Defendant.

153. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

154. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained from Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

155. Plaintiff and Class Members have no adequate remedy at law.

156. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost

time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

157. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

158. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

159. Accordingly, Plaintiff and Class members respectfully request that this Court award relief in the form of restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically, the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiff and Class members' Private Information, and compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows:

a. For an order certifying the proposed Class, appointing Plaintiff as Representative of the proposed Class, and appointing the law firms representing Plaintiff as counsel for the Class;

b. For compensatory and punitive and treble damages in an amount to be determined at trial;

c. Payment of costs and expenses of suit herein incurred;

d. Both pre-and post-judgment interest on any amounts awarded;

e. Payment of reasonable attorneys' fees and expert fees;

f. Such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: May 1, 2025

Respectfully submitted,

/s/ *Gary E. Mason*
Gary E. Mason (MD Bar No. 15033)
**MASON, LLP**
5335 Wisconsin Avenue, N.W. Suite 640
Washington, D.C. 20015
Telephone: (202) 429-2290
gmason@masonllp.com

Charles E. Schaffer*
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
jgoldenberg@gs-legal.com

Brett R. Cohen*
**LEEDS BROWN LAW, P.C.**
One Old Country Road - Suite 347
Carle Place, New York 11514
Phone: 516-874-4505
bcohen@leedsbrownlaw.com

***Counsel for Plaintiff and Proposed Class***
* Pro hac vice to be filed